LONG ISLAND NATIONAL BANK, Appellant, v. ISAAC HOROWITZ et al., Defendants, and DOROTHY LEHRER, Respondent.—

No opinion. Hopkins, Acting P. J., Brennan and Benjamin, JJ., concur; Christ, J., dissents and votes to reverse the order insofar as appealed from and to grant the motion as against defendant Lehrer, with the following memorandum, in which Latham, J., concurs: On November 22, 1963, Benjamin Lehrer and Isaac Horowitz were the sole stockholders of Thrift Appliance Mart, Inc. On that date, Lehrer and Horowitz, together with their respective spouses, executed a continuing guarantee of loans made by appellant (hereinafter called "the Bank") to the corporation. The guarantee by its terms extended to future loans made to the corporation; contained a waiver by respondent of any and all notice of the creation of such obligation, and provided that such obligations "shall conclusively be presumed to have been created * * * in reliance upon this guarantee", that the guarantee could be terminated as to new obligations only by written notice to the Bank, and that no act delay or omission by the Bank shall be deemed a waiver of any of its rights unless in writing signed by the Bank. On January 1, 1965, Benjamin Lehrer died. At that time, he and his wife owed the Bank $8,000 which they had borrowed in 1964. They had deposited collateral in connection with this 1964 loan. This loan was repaid shortly after Benjamin Lehrer's death, but the Bank insisted on holding the collateral until all loans bearing Benjamin Lehrer's personal indorsement were paid. In May, 1965 the Bank released the collateral to respondent. Respondent alleges that she orally advised the Bank's assistant cashier at that time that she was going to sell her deceased husband's stock in the corporation to the remaining stockholder, Horowitz, and would no longer be connected with, or responsible for, the debts of the corporation. She also alleges that she inquired whether she or her deceased husband had any further obligations to the Bank and the assistant cashier replied that they did not. In June, 1965 the Bank was notified of the sale of Benjamin Lehrer's stock in the corporation. In opposing the Bank's motion for summary judgment, respondent argued that she had not read the guarantee and was not aware of its continuing nature. That, of course, is not a viable defense (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162–163). Nor can the alleged statement by the assistant cashier in May, 1965 be regarded as a valid waiver, modification or discharge of the written guarantee under the plain language

of the agreement. In denying the motion for summary judgment, Special Term held that there was an issue of fact whether the loan made in 1970 to the corporation was made in whole or in part on the strength of the 1963 guarantee executed by respondent. That instrument, however, provides for a conclusive presumption that the subsequent obligation was created in reliance upon the guarantee. Under the plain language of the written guarantee, none of the issues raised by respondent is sufficient to bar summary judgment. While respondent's situation creates an understandable sympathy, the more compelling need to preserve the integrity of written contractual obligations requires reversal here.